```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

RUBEN ZAPATA                     :     CIV. NO. 3:13 CV 01875 (HBF)
                                 :
v.                               :
                                 :
CAROLYN W. COLVIN,               :
Acting Commissioner of           :
Social Security                  :
```

RECOMMENDED RULING ON DEFENDANT'S MOTION TO DISMISS [Doc. #7]

Plaintiff Ruben Zapata brings this action against defendant Commissioner of Social Security challenging a denial of social security disability benefits. [Doc. #1]. Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction, claiming that plaintiff failed to commence his appeal within the sixty-day period required by 42 U.S.C. §405(g). [Doc. #7]. Plaintiff objects to defendant's motion. [Doc. #10]. For the reasons that follow, the Commissioner's Motion to Dismiss [Doc. #7] is **GRANTED**.[1]

**I.   Procedural History**

The nearly three and a half years' path leading to the present motion warrants a close review of the underlying procedural history.

A. Initial Administrative Proceedings

On November 24, 2010, Administrative Law Judge ("ALJ") James E. Thomas issued a decision denying plaintiff's claim for disability insurance benefits. On December 13, 2010, Attorney

---

[1] At the outset, the Court is compelled to comment on the quality of defendant's brief, which is littered with gross inaccuracies as to some pivotal dates. Indeed, much of defendant's brief appears to be "cut and pasted." The Court is cognizant of the SSA's workload, but this is no excuse for submitting work of subpar quality.

1

Barbara L. Cohn, on behalf of plaintiff, appealed the ALJ's decision. [Doc. #7-3]. On February 28, 2011, the Decision Review Board ("DRB") notified plaintiff that the ALJ's decision was the final decision of the Social Security Administration ("SSA"). [Doc. #7-5]. The DRB notified plaintiff that he had sixty days to file a civil action or, alternatively, seek an extension for good cause ("DRB notice"). [Id.].[2]

      B. <u>Proceedings following DRB Notice/Attorney Avitable Affidavit</u>

Shortly after plaintiff received the February 28, 2011 DRB notice, Attorney Louis S. Avitable agreed to appeal plaintiff's claim. [Attorney Avitable Affidavit, Sept. 11, 2012, Doc. #10-1, ¶3]. Before the sixty-day filing deadline expired, Attorney Cohn contacted Attorney Avitable regarding the status of the appeal, to which Attorney Avitable represented receiving an additional extension of time. [Id. at ¶4]. Attorney Avitable attests that, "each time he was contacted by [Attorney Cohn] he informed her that [he] had obtained additional extensions up to October 2011, when [he] erroneously informed her that the complaint was filed and there would be a six-month delay awaiting transcripts." [Id. at ¶5]. When Attorney Cohn was unable to reach Attorney Avitable, she investigated the status of the case, only to learn in April 2012 that Attorney Avitable never filed the appeal. [Id. at ¶6]. On April 27, 2012, Attorney Avitable sent a letter to the Appeals Council requesting an extension of time to file

---

[2] Plaintiff presumptively received the DRB's notice on March 5, 2011, and therefore his complaint was originally due by May 4, 2011. 20 C.F.R. §§ 416, 1401, 416.1481, & 422.210(c).

2

new evidence or to file an appeal in the district court.[3] [Id. at ¶7; Doc. #7-6]. He received no response. [Attorney Avitable Affidavit, Sept. 11, 2012, Doc. #10-1, ¶8].

    C. <u>Subsequent Actions taken by Attorney Cohn</u>

On September 11, 2012, roughly five months after learning that plaintiff's appeal had not been filed, Attorney Cohn requested an extension of time from the Appeals Council to file plaintiff's federal action. [Doc. #1-2]. Enclosed with this request was Attorney Avitable's affidavit. [Id.].

On November 6, 2012, the Appeals Council "granted [plaintiff's] request for more time before we act on your case" and allowed Attorney Cohn twenty-five days to send additional evidence. [Doc. #7-7]. On November 30, 2012, Attorney Cohn requested a second extension until December 21, 2012 to file the additional evidence because of Super Storm Sandy, Thanksgiving week, and her scheduled vacation. [Doc. #7-8]. On December 18, 2012, Attorney Cohn sent the Appeals Council a document titled "Statement of the Facts and Law," which detailed the reasons plaintiff should prevail on his claim. [Doc. #7-9].

Nine months later, on September 19, 2013, Administrative Appeals Judge Gabriel E. DePass sent a letter to Attorney Cohn rescinding the Appeals Council's previous extension of time, granted "in connection with the April 30, 2012 request for review." [Doc. #10-1]. The letter states that the Appeals

---

[3] Further complicating this matter, between March and May 2011, the Decision Review Board was discontinued and replaced by the Appeals Council. [Doc. #7-6]. Plaintiff does not address this in his brief.

3

Council had not received anything from Attorney Cohn since December 13, 2010, when she submitted a statement to the Board describing why the ALJ's decision was incorrect. [Id.]. The letter further states that Attorney Cohn submitted no evidence to show she was prevented from filing a civil action within the sixty-day period after the February 28, 2011 finalization of the ALJ's decision. [Id.]. The Appeals Council acknowledged receiving Attorney Avitable's request for an extension of time to file a civil action on April 30, 2012, but stated that because he was not recognized as plaintiff's representative of record, the Appeals Council erroneously granted the extension. [Id.]. The Appeals Council did not acknowledge Attorney Cohn's September 11, 2012 letter requesting an extension, but noted receiving Attorney Avitable's affidavit. [Id.]. The Appeals Council ultimately denied Attorney Cohn's request for more time to file a civil action. [Id.].

On October 15, 2013, Attorney Cohn responded to Judge Gabriel E. DePass's letter. [Doc. #7-10]. First, Attorney Cohn referenced the September 19, 2013 letter's statement that "Mr. Avitable submitted an affidavit dated September 11, 2012," and noted that she in fact had submitted the affidavit in support of her September 11, 2012 request for an extension of a time. [Id.]. Second, she noted that contrary to the Appeals Council's assertion, Attorney Avitable's April 27, 2012 letter was never acted upon. [Id.]. Finally, Attorney Cohn noted the Appeals Council made no mention of her September 11, 2012 request for an extension of time. [Id.]. Instead, the Appeals Council stated

4

that Attorney Avitable's request for review, which Attorney Cohn asserts was never acted upon, was granted in error because he was not the representative of record. [Id]. Ultimately, Attorney Cohn requested that the Appeals Council review her Statements of the Facts and Law dated December 18, 2012 [Doc. #7-9], and issue a decision on the merits so plaintiff could seek appellate review in federal court. [Doc. #7-10].

Plaintiff filed his complaint on December 18, 2013.

## II. Applicable Law

42 U.S.C. § 405(g) sets forth the statutory deadline for filing a civil action to challenge the final rejection of a social security claim:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

The sixty day time period begins to run when the claimant receives the notice of decision. Pursuant to the Regulations, the claimant presumptively receives notice of a denial five days after the date on the notice; thus, the claimant has sixty-five days from the date on the notice to commence a civil action in federal court. 20 C.F.R. §§ 416, 1401, 416.1481, & 422.210(c). The Supreme Court has held the "60-day requirement is not jurisdictional, but rather constitutes a period of limitations." Bowen v. City of New York, 476 U.S. 467, 478 (1986) (citations omitted). Further, Congress designed the statute containing this

5

limitations period to be "'unusually protective' of claimants." Id. at 480 (citation omitted); see also Dixon v. Shalala, 54 F.3d 1019, 1028 (2d Cir. 1995).

Due to the protective nature of the statute for claimants, the Second Circuit has observed that equitable tolling of the limitations period is "not infrequently appropriate." New York v. Sullivan, 906 F.2d 910, 917 (2d Cir. 1990). Plaintiff bears the burden of establishing that exceptional circumstances existed that warrant equitable tolling. Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). Generally, a late-filing party seeking equitable tolling must prove two things. First, "extraordinary circumstances" must have prevented the party from filing on time. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (citing Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996)). Second, the party must have acted with "reasonable diligence" in pursuing his application during the period he seeks to toll. Johnson, 86 F.3d at 12. As the Second Circuit has recognized,

> To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.

Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) (quoting Hizbullahankamon v. Walker, 255 F.3d 65, 75 (2d Cir.

6

2001), cert. denied, 536 U.S. 925, 122 S. Ct. 2593, 153 L. Ed. 2d 782 (2002)).

### III. Discussion

Here, the parties agree that the plaintiff filed his complaint more than sixty days after receiving the DRB notice. Plaintiff filed his complaint on December 18, 2013, over two years after the May 4, 2011 deadline. However, the parties disagree: (1) whether this case presents the extraordinary circumstances which justify the equitable tolling of the statutory deadline to commence a civil action; and (2) whether the plaintiff pursued his claim with reasonable diligence. Defendant argues there are no circumstances in the case to justify tolling the statutory period.[4] Plaintiff further responds that equitable tolling is proper because the case was filed within the statutory period from the date of last correspondence.[5]

### A. Extraordinary Circumstances

To invoke equitable tolling, plaintiff must show extraordinary circumstances prevented him from timely filing his claim. Hizbullahankhamon, 255 F.3d at 75. Attorney error does

---

[4] Although the government argues plaintiff missed the filing deadline by a mere six days, the Court's review of the record indicates otherwise. Plaintiff presumptively received the DRB's denial of review on March 5, 2011, see C.F.R. § 422.210(c), and thus was to file a civil action on or before May 4, 2011. Plaintiff did not file his complaint until December 18, 2013.

[5] The last correspondence of record from Attorney Cohn to Judge DePass is dated October 15, 2013. Plaintiff filed his complaint sixty-four days later on December 18, 2013. Thus, it appears plaintiff's reference to "statutory period" denotes the sixty five day period per 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(c). However, this timeframe loses significance after the deadline has lapsed, and does not mandate a finding that equitable tolling is proper. Plaintiff further fails to present any case law supporting this argument.

7

not normally constitute the extraordinary circumstances required to permit equitable tolling. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002) (citing Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam)); Davila v. Barnhart, 225 F. Supp. 2d 337, 339 (S.D.N.Y. 2002) (equitable tolling not justified where attorney filed one day late due to his miscalculation of the filing deadline). However, attorney malfeasance has in some instances warranted equitable tolling. For example, in Torres v. Barnhart, 417 F.3d 276 (2d Cir. 2005), the Second Circuit equitably tolled a filing deadline where a litigant, on the verge of filing his own pro se complaint, reasonably believed an attorney, fully aware of the deadline, had agreed to assist him in filing, and only later learned the attorney had taken no action. Id. at 279-80; see, e.g., Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) (quoting Baldayaque, 338 F.3d at 152 (addressing equitable tolling in habeas proceedings, and noting that "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary."); Baldayaque, 338 F.3d at 152-53 (holding that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year statute of limitations period of AEDPA.").

Here, there is little question that the circumstances outlined above are "extraordinary." Not only did plaintiff suffer from the malfeasance of one attorney, but also the

bureaucratic confusion of the Appeals Council. First, Attorney Avitable agreed to handle plaintiff's appeal, then proceeded to do nothing, except repeatedly deceive Attorney Cohn. His affidavit does not mention mistakes or accidents; he admits to making intentional misrepresentations regarding the status of plaintiff's appeal. Certainly these actions alone are "far outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary.'" Baldayaque, 338 F.3d at 153 (citation omitted). However, further compounding these circumstances, after discovering Attorney Avitable had been misleading her, Attorney Cohn took five months to independently request additional time to file a civil action. Adding additional salt to the proverbial wound, plaintiff also suffered the Appeals Council's bureaucratic confusion as it related to the multiple requests for extensions of time. See id. at 152-53 (noting that attorney's actions when taken together, including failure to file habeas petition as requested by plaintiff, failure to conduct any legal research, and never speaking or meeting plaintiff, were extraordinary).

While Davila held an attorney's one-day miscalculation of the filing deadline insufficient to warrant equitable tolling, 225 F. Supp. 2d at 339, much more contributed to the late filing in this case. The combination of attorney malfeasance, delay, and government error constitute the extraordinary circumstances which prevented plaintiff from timely filing his appeal. However, "[t]he presence of extraordinary circumstances is not enough, [] to justify the application of equitable tolling. A

9

plaintiff must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." Baldayaque, 338 F.3d at 153 (citing Hizbullahankhamon, 255 F.3d at 75).

**B. Reasonable Diligence**

The reasonable diligence requirement of equitable tolling does not amount to "maximum feasible diligence." Holland v. Florida, 560 U.S. 631, 653 (2010). Instead, the claimant must have acted "as diligently as reasonably could have been expected under the circumstances." Baldayaque, 338 F.3d at 153; see also id. ("The standard is not 'extreme diligence' or exceptional diligence' it is reasonable diligence.") (emphasis in original). Even if fraudulent or other conduct concealed the existence of a claim, the party seeking equitable tolling must have acted reasonably to discover the facts and protect his rights. See Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990).

Unfortunately, the circumstances outlined above do not demonstrate that plaintiff acted "as diligently as reasonably could have been expected under the circumstances." First, Attorney Cohn did not act reasonably diligent to discover Attorney Avitable's misrepresentations. Unlike what a reasonably diligent attorney would have done, the record does not reflect that Attorney Cohn ever requested a copy of the complaint at the time it was allegedly filed or, alternatively, conducted a simple search to retrieve a copy independently. The record also does not reflect that that Attorney Cohn ever requested the

docket number for the civil action.  Second, waiting until April 2012 to independently check the status of plaintiff's appeal does not seem reasonable in light of Attorney Cohn's ease of access to CMECF. Indeed, less than a minute's time and a simple search would have revealed that no action had been taken on plaintiff's behalf. Although Attorney Cohn did follow up with Attorney Avitable during the time in which he allegedly had received extensions to file in federal court, the Court believes that his having received six months in extensions should have raised some questions with Attorney Cohn.  Third, even after discovering Attorney Avitable's misrepresentations, instead of taking action, Attorney Cohn was content to rely on Attorney Avitable to request yet another extension from the Appeals Council. Indeed, it was not until <u>five months</u> later that Attorney Cohn attempted to independently rectify the situation. Even then, although she requested additional time in which to file a federal action, she was instead granted an extension to submit additional information to the Appeals Council. Rather than seek clarification from the Appeals Council as to this response, Attorney Cohn's next step was to file yet <u>another</u> request for an extension on account of mail delays due to Super Storm Sandy, Thanksgiving week, and her personal vacation during the week of December 8th.

   The extraordinary circumstances of this case reasonably began in April 2012, when Attorney Cohn discovered that plaintiff's civil action had not been filed as represented. Although at this time Attorney Avitable requested a further

11

extension from the Appeals Council, this was never acted upon and it took Attorney Cohn <u>five months</u> to follow up and request her own extension. Thereafter, she requested additional extensions and ultimately did not file plaintiff's civil action for over another year. Here, the Court finds that plaintiff did not "exercise[] reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broke, and the extraordinary circumstances therefore did not prevent timely filing." <u>Baldayaqye</u>, 338 F.3d at 150.[6]

### IV. Conclusion

For the foregoing reasons, the defendant's Motion to Dismiss [Doc. #7] is **GRANTED**. This is a Recommended Ruling. <u>See</u> Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with the order. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989) (per curiam); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 18th day of September 2014.

/s/

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes that the link of causation between the extraordinary circumstances and the failure to file occurred well before the Appeals Council's September 2013 letter rescinding the previously granted extensions.