UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUBEN ZAPATA,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, *Acting Commissioner of Social Security, U.S.A.*,<br>    Defendant. | No. 3:13-cv-01875 (JAM) |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Ruben Zapata seeks review of the denial of his claim for Social Security disability benefits. Unfortunately, plaintiff did not file this court action until nearly three years after the law required him to seek judicial review. The issue now is whether plaintiff's delay should be excused under the doctrine of equitable tolling.

The Commissioner has filed a motion to dismiss (Doc. #7), and Magistrate Judge Fitzsimmons has issued a ruling (Doc. #11) recommending that I grant the motion to dismiss. I fully adopt the careful and well-reasoned ruling of Judge Fitzsimmons. In my ruling here, I will address additional issues and argument as developed by plaintiff's objection to Judge Fitzsimmons' ruling and during the course of a subsequent evidentiary hearing before me.

Although I conclude that extraordinary circumstances involving extreme attorney misconduct initially justified plaintiff's failure to file his complaint on time, I further conclude that—*after* this misconduct was exposed—neither plaintiff nor his other counsel acted with reasonable diligence to ensure the timely filing of plaintiff's federal court action. Accordingly, I will grant the Commissioner's motion to dismiss.

**BACKGROUND**

Plaintiff received a final administrative decision denying his claim for Social Security disability benefits on February 28, 2011. The notice of decision advised him that he had 60 days to file a federal court action to seek judicial review. *See* 42 U.S.C. § 405(g). But, as a result of a convoluted series of incidents described at length in Judge Fitzsimmons' ruling, plaintiff did not end up filing the instant federal court action until nearly three years later on December 18, 2013.

I need not review the entire three-year period. For purposes of my equitable tolling analysis in this ruling, I will focus on what happened during the first year-and-a-half, because it is clear that the events during that time period alone warrant a conclusion that equitable tolling does not apply.

Shortly after receiving the final administrative decision, plaintiff and his attorney, Barbara Cohn, met with attorney Louis Avitabile. Attorney Cohn had assisted plaintiff during the administrative proceedings before the Social Security Administration. As Attorney Cohn has attested, she was not experienced with federal court practice, and she and plaintiff met with Attorney Avitabile because one of her colleagues had recommended him. Doc. #12-2 at 1. Attorney Avitabile agreed to file a federal court action on plaintiff's behalf. For more than a year, Attorney Avitabile assured Attorney Cohn that he had filed for an extension of time and then that he had filed the federal court action as promised. Although she made multiple requests, Attorney Cohn did not receive a copy of the federal lawsuit from Attorney Avitabile. In April 2012—more than a year after the lawsuit should have been filed—Attorney Cohn learned through her own independent inquiry efforts that Attorney Avitabile had never filed an action as promised. Doc. #12-2 at 1-2.

Despite discovering that Attorney Avitabile had lied about filing a federal court action, Attorney Cohn decided to continue working with him. As she states in her affidavit, "I was unable to retain another attorney at this point," and "Attorney Avitable [sic] was knowledgeable in the Social Security laws and procedures and assured me he would do everything possible to rectify the situation and further agreed to keep me fully informed." Doc. #12-2 at 2. At the evidentiary hearing, Attorney Cohn said that she told Attorney Avitabile: "Look, you've made this mess. Tell me how we can get out of it."

On April 27, 2012, Attorney Avitabile wrote to the Social Security Appeals Council asking to have the case reopened so that he could present new medical evidence and further seeking an extension of time to file a court action to challenge the administrative decision. Doc. #7-6; 42 U.S.C. § 405(g) (authorizing Social Security Administration to extend the 60-day time for filing a court action). The letter did not mention that Attorney Avitabile had misled plaintiff and Attorney Cohn about having previously filed a federal court complaint. According to Attorney Cohn, she demanded and received a copy of this letter. Doc. #12-2 at 2. She states that she then called the Appeals Council to follow up on this letter and was advised that the Council had six months to act on the extension request and usually took the full time to make a decision. *Id.* at 2-3.

Almost five months later and "worried about the possibility of an unfavorable result," Attorney Cohn herself decided to write to the Appeals Council. *Id.* at 3. By letter dated September 11, 2012, she wrote to the Council asking for an extension of time on the ground that plaintiff "was misled by counsel and believed all deadlines had been met and the case was filed in a timely manner." Doc. #10-1 at 5. She attached to the letter an affidavit with Attorney

3

Avitabile's notarized signature, stating in relevant part that he had "erroneously informed [Attorney Cohn] that the [federal court] complaint was filed." Doc. #10-1 at 6.

Following this letter, the Social Security Appeals Council granted plaintiff's request for extension in November 2012, but then later revoked its grant of the extension in September 2013. *See* Doc. #11 at 3-4 (describing details of correspondence exchanged between Attorney Cohn and Social Security Appeals Council). In October 2013, Attorney Cohn wrote to the Appeals Council to object, and then Attorney Cohn finally filed the instant federal court complaint on December 18, 2013. *Id.* at 4-5.

## DISCUSSION

The doctrine of equitable tolling allows a court to excuse a party's failure to timely comply with a legally required filing deadline. Although the "equitable" moniker might suggest that a court has unfettered discretion to decide if a default should be overlooked, it is well established that the invocation of equitable tolling is subject to at least two basic pre-conditions. First, a party must show that extraordinary circumstances stood in his way to prevent timely filing. Second, the defaulting party must show that—notwithstanding the obstacle posed by extraordinary circumstances—he pursued his rights with reasonable diligence throughout the time period that he seeks to have tolled. *See Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016); *Martinez v. Superintendent of E. Corr. Facility,* 806 F.3d 27, 31 (2d Cir. 2015). Accordingly, I will consider in turn whether each of these pre-conditions of "extraordinary circumstances" and "reasonable diligence" is satisfied in this case.

### *Were There Extraordinary Circumstances?*

Judge Fitzsimmons correctly concluded that there were extraordinary circumstances to warrant tolling of the filing period from February 2011 until April 2012. Plaintiff and Attorney

4

Cohn met with and retained Attorney Avitabile to file a federal court action. Attorney Avitabile never filed the action as promised and quite inexplicably and outrageously lied to Attorney Cohn that he had sought extensions and filed the action. Attorney Avitabile not only admitted this extraordinary misconduct in the affidavit that Attorney Cohn submitted to the Appeals Council in September 2012, but he also came to the evidentiary hearing before me and admitted that "I did mislead them" and that he did so because he felt "overwhelmed" in some vague manner.

I agree with Judge Fitzsimmons that this kind of dishonest attorney misconduct qualifies as an extraordinary circumstance to warrant equitable tolling until April 2012, at which time Attorney Avitabile's malfeasance was discovered. Of course, the mistakes of counsel do not ordinarily constitute extraordinary circumstances for purpose of equitable tolling. The Second Circuit has observed "that attorney error *normally* will not constitute the extraordinary circumstances required" to invoke equitable tolling, "while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). Thus, in *Baldayaque*, the court made clear in light of prior precedent that an attorney's "simple mistakes about the rules applied to the deadlines for filing of habeas petitions" would not constitute extraordinary circumstances, but that extraordinary circumstances did indeed exist when a client directed his attorney to file a motion for post-conviction relief but the attorney failed to do so, because "[b]y refusing to do what was requested by his client on such a fundamental matter, [the attorney] violated a basic duty of an attorney to his client." *Ibid.*

Soon after *Baldayaque*, the Second Circuit revisited the issue of equitable tolling in the Social Security disability context. In *Torres v. Barnhart*, 417 F.3d 276 (2d. Cir. 2005), the court concluded that extraordinary circumstances existed when a Social Security claimant was "on the

5

verge of filing his own *pro se* complaint" but was then misled by counsel that counsel would file a complaint and never did. *Id.* at 280. The case presented "a legally-ignorant, linguistically-challenged *pro se* claimant who nonetheless did everything possible to try to assert his claim in timely fashion and was only stymied from so doing by being seriously misled by an attorney in whom he placed his trust." *Ibid.*

More recently, the Second Circuit has re-affirmed that "[a]ttorney error generally does not rise to the level of an 'extraordinary circumstance.'" *Martinez*, 806 F.3d at 31. It has made clear, however, that "attorney negligence may constitute an extraordinary circumstance when it is so egregious as to amount to an effective abandonment of the attorney-client relationship." *Ibid.; see also Maples v. Thomas*, 132 S. Ct. 912, 922-24 (2012) (same); Wendy Zorana Zupac, *Mere Negligence or Abandonment? Evaluating Claims of Attorney Misconduct After Maples v. Thomas*, 122 Yale L.J. 1328 (2013). Under this standard, the extreme and deceptive conduct of Attorney Avitabile amounted to extraordinary circumstances.

### *Was There Reasonable Diligence?*

The extraordinary circumstances ended in April 2012 when Attorney Avitabile's malfeasance came to light. Accordingly, the question turns to whether plaintiff at that time exercised reasonable diligence to timely file a federal court action within 60 days. For the reasons set forth below, I conclude that neither plaintiff nor any of his counsel acted with reasonable diligence.

To begin with, the burden rests on plaintiff to show reasonable diligence, and I note at the outset there has been no showing of any individual effort by plaintiff himself to file a federal court action at any time (such as evidence that plaintiff insisted after April 2012 on the filing of a federal court action as in *Baldayaque* or was on the verge of doing so himself as in *Torres*). All

indications are that plaintiff was (understandably) relying on Attorney Cohn, and so my focus—and that of plaintiff's own evidentiary presentation—is on whether Attorney Cohn as plaintiff's agent acted with reasonable diligence to file a timely federal court action following her discovery of Attorney Avitabile's misconduct.[1]

I agree with Judge Fitzsimmons that Attorney Cohn did not act with reasonable diligence, especially for the time period of well more than 60 days that elapsed from April 2012 through the time that she wrote to the Appeals Council in September 2012 to expose Attorney Avitabile's misconduct as a basis for seeking an extension of time. What Attorney Cohn should have done as soon as she learned of Attorney Avitabile's misconduct was to promptly file a federal court action and to seek equitable tolling of the 60-day time deadline in light of the clear guidance of the *Baldayaque* and *Torres* decisions that such attorney misconduct would warrant tolling. Because the venal facts and obvious prejudice here closely resemble or exceed what happened in *Baldayaque* and *Torres*, there can be little doubt that a federal court would have concluded that the time limit should be equitably tolled.

But instead of seeking such relief, Attorney Cohn decided to continue to rely on the supposed expertise and advice of Attorney Avitabile. She followed the recommendation of Attorney Avitabile for him to file a letter with the Appeals Council on April 27, 2012, to seek administrative reconsideration of the adverse decision and to seek an extension of time based on technical reasons to file a federal court complaint.

---

[1] Because I focus on whether Attorney Cohn—as opposed to plaintiff personally—acted with reasonable diligence, I do not apply here the so-called *Doe* factors as discussed by the Second Circuit in *Martinez*, 806 F.3d at 31-33. If I were to apply these factors, I would conclude that plaintiff has fallen short of establishing his own reasonable diligence because he has failed altogether in his filings or at the evidentiary hearing to identify his own efforts—apart from those of Attorney Cohn—to ensure the timely filing of a federal court complaint after Attorney Avitabile's misconduct was exposed.

It was not reasonable for Attorney Cohn to rely yet again on Attorney Avitabile when he had already lied to her and gravely jeopardized her client's federal rights. Nor was it reasonable for Attorney Cohn to believe that Attorney Avitabile's letter seeking an administrative extension would likely result in the requested relief. The letter was sent more than a year after the administrative decision had become final. Most importantly, the letter failed to disclose the real and best reason for an extension request—Attorney Avitabile's dishonest malfeasance. Rather than citing the real and best reason for an extension request, the letter cited technical reasons and did nothing to explain why an extension was being sought more than a year after the date when a federal court action should have been filed.[2]

As soon as Attorney Cohn learned of Attorney Avitabile's dishonesty, her sole concern should have been the interests and welfare of the jeopardized client, regardless of the interests of Attorney Avitabile in concealing his own misconduct and further corrupting the representation of the client.[3] But that is not what happened. Attorney Cohn went along with Attorney Avitabile's effort to extricate plaintiff from the time-bar problem by means of his writing a letter to the Social Security Administration that was clangingly silent about the most important and

---

[2] The Appeals Council's regulations make clear the importance of disclosing the equitable reasons that support an extension request. *See, e.g.*, 20 C.F.R. § 404.982 (allowing extension request to Appeals Council for filing of federal court action but further stating that the request "must give the reasons why the action was not filed within the stated time period" of 60 days); 20 C.F.R. § 404.911 (listing "good cause" reasons for extensions of time and instructing that "[i]n determining whether you have shown good cause for missing a deadline to request review, we consider – (1) What circumstances kept you from making the request on time"). Attorney Cohn argues that it was reasonable to seek an extension of time in the first instance from the Appeals Council rather than to file an action in this Court, because the Appeals Council applies a more forgiving "good cause" legal standard for granting an extension-of-time than does a federal court when applying equitable tolling principles. *See also Torres*, 417 F.3d at 283 (Jacobs, J., concurring) (explaining how the standard for "good cause" applied by the Social Security Administration is less demanding than the doctrine of equitable tolling that would be applied by a court). Even so, the fact remains as discussed above that when Attorney Avitabile—acting with Attorney Cohn's knowledge and approval—sought such an extension of time in April 2012, the extension request did not disclose the real and most persuasive reason for the Social Security Administration to grant such a request.

[3] *See, e.g., Maples*, 132 S. Ct. at 925 n.8 (describing the "significant conflict of interest" that arises for a law firm once a "crucial [filing] deadline" passes, because "following the default, the firm's interest in avoiding damage to its own reputation was at odds with [plaintiff's] strongest argument—*i.e.*, that his attorneys had abandoned him, therefore he had cause to be relieved from the default" and noting the warped incentive of the malfeasant law firm to seek to protect the client's interest only in an incomplete manner that does not jeopardize the self-interests of the law firm to avoid responsibility for prior malpractice of missing the filing deadline).

compelling equitable reason why plaintiff deserved more time to file a federal court complaint: that Attorney Avitable had lied.

Not surprisingly, the Social Security Administration did not promptly take action on Attorney Avitabile's letter request. Nearly five more months went by, and Attorney Cohn ultimately followed up with her own extension request letter on September 11, 2012. This time—and now for the first time—she disclosed that an extension was warranted because of the duplicitous misconduct of Attorney Avitabile. Doc. #10-1 at 5.

I credit Attorney Cohn with ultimately bringing to light Attorney Avitable's malfeasance. I do not suggest that Attorney Cohn abandoned her client or wished to subvert his interests. But she made the wrong choice at the critical time for her client's interests. And it was five months too late before she did the right thing. Attorney Cohn did not act with reasonable diligence throughout the time period that plaintiff seeks to be equitably tolled. Accordingly, I conclude that equitable tolling is not warranted.

## CONCLUSION

The Commissioner's motion to dismiss is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 29th day of February 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge